976

In re A. BARLETTA & SONS,
INC., a corporate debtor.

In re A. BARLETTA & SONS,
a partnership debtor.

A. BARLETTA & SONS, INC. and A.
Barletta & Sons, a partnership,
Debtors/Plaintiffs,

v.

TRIBBLE & STEPHENS CO., Center-
point Properties, Inc., Centerpoint Poco-
no LP, Mount Pocono Retail Associates
and P–L Pocono Associates Limited
Partnership, Defendants.

Bankruptcy Nos. 5–92–00666, 5–92–01279.
Adv. No. 5–94–0166A.

United States Bankruptcy Court,
M.D. Pennsylvania.

July 20, 1995.

Joanne Semeister, John Francis Gough, Philadelphia, PA, Ronald V. Santora, Wilkes–Barre, PA, for debtors.

Myles R. Wren, Nogi, Appleton, Weinberger & Wren, P.C., Scranton, PA, for Tribble & Stephens Co., CenterPoint Properties, Inc., CenterPoint Pocono LP, Mt. Pocono Retail Assoc. and P–L Pocono Assoc. Ltd. Partnership.

Curtis Martin, Atlanta, GA, for CenterPoint Properties, Inc., CenterPoint Pocono LP, Mt. Pocono Retail Assoc. and P–L Pocono Assoc. Ltd. Partnership.

John S. Torigian, Krell & Torigian, Houston, TX, for Tribble & Stephens Co.

J. Charles Sheak, Sheak & Korzun, P.C., Pennington, NJ, Andrew J. Primerano, Kennedy & Lucadamo, Hazleton, PA, for non-bankruptcy debtors.

### *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

This matter was initiated by the above-captioned Debtors/Plaintiffs, A. Barletta & Sons, Inc. and A. Barletta & Sons, a partnership, hereinafter ("Plaintiffs"), against Tribble & Stephens Co., et al., by adversary complaint filed September 16, 1994. The instant matter deals with a Motion for Summary Judgment filed on behalf of all of the above-captioned Defendants, hereinafter ("Defendants"). The complaint contains various counts all stemming from a sub-contract dealing with certain site work namely, providing asphalt paving and installation of a water-main system at a project commonly known as Mount Pocono Plaza located at the intersection of Pennsylvania Route 940 and Oak Street, Mount Pocono, Monroe County, Pennsylvania.

Defendant–CenterPoint, as owner, entered into a written construction agreement with Defendant–Tribble & Stephens Co., as general contractor, on or about August 23, 1989 for the construction of the Mount Pocono Plaza project. Thereafter, on or about August 31, 1989, Plaintiffs entered into a sub-contract with Defendant–Tribble & Stephens Co. for work to be performed at that project. The contract called for Plaintiffs to supply

labor and materials for asphalt paving and installation of a water-main system. The original amount of the contract was One Million Four Hundred Thirty–Five Thousand Six Hundred Ten Dollars ($1,435,610.00) but, with certain change orders, the total amount allegedly due to the Plaintiffs increased to One Million Five Hundred Nine Thousand Five Hundred Thirty–Five Dollars ($1,509,-535.00). Of that amount, Plaintiffs allege that they have been paid One Million Sixty–Two Thousand Five Hundred Ninety–Eight and 01/00 Dollars ($1,062,598.01). Plaintiffs allege that the work under the sub-contract agreement was performed by the Plaintiffs from a period of August, 1988 through September, 1990.

Plaintiffs also provided labor and materials for the installation of a "ductile iron line system" to replace the water-main system required under the specifications for the project. The Plaintiffs allege that material and costs to install the ductile iron line system approximated Five Hundred Sixty–Nine Thousand Five Hundred Eighty–Eight and 93/100 Dollars ($569,588.93). Plaintiffs' claim is in excess of One Million Dollars ($1,000,-000.00).

The several counts of the complaint comprise the following: Count I—Breach of Contract—Tribble & Stephens Co.; Count II—Unjust Enrichment—Tribble & Stephens Co.; Count III—Quantum Meruit—CenterPoint Properties, Inc.; Count IV—Unjust Enrichment—CenterPoint Properties, Inc.; Count V—Intentional Interference with Contractual Relations—CenterPoint Properties, Inc.; Count VI—Intentional Interference with Contractual Relations—Tribble & Stephens Co.; Count VII—Equitable Subordination—Tribble & Stephens Co.; and Count VIII—Equitable Subordination—CenterPoint Properties, Inc.

In addition to all the monetary damages requested by the Plaintiffs, they also request this court to equitably subordinate the Defendants' claims, to the extent they are allowed, to all claims of other creditors pursuant to 11 U.S.C. § 510 of the United States Bankruptcy Code.

Some of the allegations against Center-Point Properties, Inc. and Tribble & Ste-phens Co. allege that bonding companies were notified by a letter to Pachence Insurance Agency of the failure of the ductile iron line and paving at the project which thwarted attempts by Plaintiffs to receive performance and payment bonds for future projects. This failure to receive performance and payment bonds hampered the Plaintiffs' business operations because the actions by CenterPoint Properties, Inc. and Tribble & Stephens Co. were taken in callous disregard of the Plaintiffs' rights and without diligent investigation as to any liability for failure at the project.

The Defendants argue that because the contract specifically provides that it shall be construed under the law of Texas that this court should apply Texas law in resolution of the instant adversary. In that regard, they argue that the applicable Texas statute of limitations has run, barring the instant lawsuit. They argue that Plaintiffs' breach of contract claim is barred under Texas' four-year statute of limitations found at Texas Civil Practice and Remedy Code Section 16.051 and that Plaintiffs' unjust enrichment and contractual interference claims are barred under Texas' two-year statute of limitations found at Texas Civil Practice and Remedy Code Section 16.003. In both cases, Defendants' argue that the project, at the very latest, was completed in July of 1990 and the instant complaint was not filed until September 16, 1994, well over the two-year and four-year statutes of limitations indicated above.

As an alternative argument, Defendants claim that Plaintiffs' breach of contract claim, unjust enrichment claim, and quantum meruit claim are all governed by Pennsylvania's four-year statute of limitations and are just as time-barred citing 42 Pa.C.S.A. § 5525. Likewise, Pennsylvania's two-year statute of limitations found in 42 Pa.C.S.A. § 5524 would bar Plaintiffs' contractual interference claim.

■ Initially, the court must decide whether to apply Texas or Pennsylvania law to the instant adversary. In response to Defendants' position, the Debtors argue that, under Pennsylvania conflict of laws principles, Pennsylvania law should be applied to

interpreting the sub-contract. The Plaintiffs assert that the interest and policies of the various states may overrule a specific choice of law provision found in a contract where the state named in the contract has no connection with the contract or its performance. Furthermore, even though the sub-contract provides that it shall be governed by the laws of the state of Texas, Pennsylvania conflict of laws principles dictate that Pennsylvania substantive law should be applied in interpreting the contract. Also, Plaintiffs claim that the sub-contract is one of adhesion and, therefore, the clause providing for application of Texas law is unenforceable.

In support of the Plaintiffs' position, they draw our attention to the case of *LCI Communications, Inc. v. Wilson*, 700 F.Supp. 1390 (W.D.Pa.1988). In that case, dealing with an employment contract, the court wrote the following at 1396. "Pennsylvania courts honor choice of law provisions in contracts, provided that the choice of forum does not seriously impair the Plaintiff's ability to pursue his cause of action." Citing *Central Contracting Co. v. C.E. Youngdahl & Company, Inc.*, 418 Pa. 122, 133, 209 A.2d 810, 816 (1965).

The instant sub-contract does not provide for a forum foreign to either of the parties. In fact, the Plaintiffs in this case have controlled the selection of the forum by selecting and filing an adversary complaint in this court and a lawsuit in the District Court for the Middle District of Pennsylvania in 1991.

Admittedly, there are many contacts with the state of Pennsylvania but there is no other argument presented to show that the interests and policies of Pennsylvania should overrule a specific choice of law provision found in this contract. The court finds nothing unusual that with one of the parties being a Texas corporation, the parties would select Texas as the law to be applied in the interpretation of this contract. While those arguments may have been compelling in a situation where the parties did not contractually determine the law to be applied to the interpretation of the contract, the court finds that nothing has been presented to this court to disturb the contractual arrangements made by the parties.

▮ The court also finds that there is no support to the argument that this was an adhesion contract. Plaintiffs allege that the sub-contract was on a pre-printed form and the terms were not subject to negotiation. A review of the sub-contract indicates the only portion of the contract that was not pre-printed was the space left in the paragraph indicating the contract would be controlled by the laws of Texas. Apparently, this contract was written in such a way that any state can be inserted into that form presumably after a negotiation between the parties has taken place.

The court having determined that Texas law applies, it will now look at the applicable statutes of limitations imposed by Texas law.

▮ Concerning the four-year statute of limitations as applied to the breach of contract action, the court will recognize that, in May of 1991, the corporate Debtor filed an action against Tribble & Stephens Co. and CenterPoint Properties, Inc. in the Middle District of Pennsylvania. As to those Defendants, the running of the statute of limitations has been tolled. Regardless, the complaint in the instant action indicates that it is seeking damages through September of 1990. The Defendants argue that any breaches would have had to occur by July of 1990. The instant matter was filed in September of 1994 and there is a question as to when the causes of action for breach of contract actually arose. The court cannot make a determination at this point as to when the breach occurred. Therefore, as to both the corporate and the partnership Debtors, the court cannot determine that the statute of limitations for breach of contract has run.

▮ Such is not the case, however, with the actions which are controlled by a two-year statute of limitations. Defendants argue that Texas does not recognize unjust enrichment as an independent cause of action citing *PIC Realty Corp. v. Southfield Farms, Inc.*, 832 S.W.2d 610, 614 (Tex.App.–Corpus Christi, 1992). The court finds that there is no cause of action for unjust enrichment under Texas law. On the other hand, the *PIC Realty* court indicates that, while there is no cause of action, unjust enrichment could

be considered as a measure of damages. Consequently, we will grant the Motion for Summary Judgment concerning the unjust enrichment counts of the complaint against the Defendants but will reserve a decision after presentation of evidence as to whether Defendants were unjustly enriched by the labor and materials provided by the Debtors and whether they can be considered a measure of damages by the court.

■ Regarding the quantum meruit claim, Defendants argue that Plaintiffs seek to recover in quantum meruit for the same labor, material and alleged damages as under the breach of contract action. No argument is made concerning the application of Texas law and, therefore, the court will deny the Motion for Summary Judgment as it applies to that count for quantum meruit. As was applied to the unjust enrichment claim, if the breach of contract action fails against the Defendants, quantum meruit can be applied as a measure of damages.

■ The court will next consider the Texas two-year statute of limitation barring the Debtors' contractual interference claim. That claim, even accepting the Plaintiffs' claim that the breach could have occurred in September of 1990, is filed four (4) years after that date and is barred by the Texas two-year statute of limitations. See *Tex.Civ. Pract. & Rem.Code § 16.003.*

Plaintiffs argue that, nonetheless, this action for intentional interference with contractual relations would not be time-barred because this claim was raised as a defense to the proof of claim filed by Tribble & Stephens Co. and that filed by the other Defendants. The count of the complaint for intentional interference with contractual relations has expired under the terms of the Texas statute of limitations (*Tex.Civ.Pract. & Rem. Code § 16.003*). The expiration of the limitations period, however, may not be used to deny the Debtors an affirmative defense to either a counterclaim in this litigation or as a defense to the proofs of claim filed in this case. *Wells v. Rockefeller,* 728 F.2d 209, 215 (3rd Cir.1984); *3 Moore's Federal Practice, § 13.11, pp. 13–47–51.*

■ The next argument for resolution concerns the application of judicial estoppel which Defendants assert should be applied by this court because of allegations made in a prior complaint filed in the Court of Common Pleas of Luzerne County in the case of Water Specialties, Inc. v. A. Barletta & Sons, Inc. filed to number 313–C of 1991 and an affidavit of Anthony Barletta attached thereto. In short, the Defendants request this court to apply judicial estoppel thereby barring the Plaintiffs from denying liability for certain costs of installing a replacement line and entitling the Defendants to a Motion for Summary Judgment on the water line claim portion of the complaint. The court has reviewed the cases in support of the Defendants' position and finds that judicial estoppel is not appropriate in this matter.

"The doctrine of judicial estoppel precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously asserted by it. *See Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). A party who has asserted a position may not later on be heard to contradict itself in order to establish an inconsistent position. *See In re Pizazz Disco & Supperclub, Inc.,* 114 B.R. 104, 110 (Bankr.W.D.Pa.1990). That party may be estopped from asserting the inconsistent position in the latter proceeding. *Id.*

Judicial estoppel applies only if a party has **successfully** asserted an inconsistent position in a prior proceeding. *Id.* This means that the court must have been persuaded to **accept** its position in the prior proceeding. *See In re Cheripka,* 26 CBC2d [385] at 397–98 [1991 WL 276289 (3d Cir.1991) ]. Acceptance in this context requires only that the court adopted the position either as a preliminary matter or as part of a final disposition. *See In re Pizazz,* 114 B.R. at 110." *In Re Doemling,* 157 B.R. 565, 572 (Bkrtcy.W.D.Pa.1993).

The state court action was dismissed by agreement of the litigants and, as such, was not successfully used by a litigant and accepted by a court.

Plaintiffs also filed a count for equitable subordination. The Defendants argue that they were within their rights to file a Motion for Abstention and, therefore, should not be equitably subordinated for exercising their procedural and substantive rights. In a request for equitable subordination based upon 11 U.S.C. § 510(c), the court finds that subordination under that section may be proper without creditor misconduct and that under certain circumstances, the court may exercise its discretion to subordinate a creditor's claim. See *Burden v. United States (In Re Burden)*, 917 F.2d 115 (3rd Cir.1990). The court will not dismiss this portion of the count at this time and will consider the request for equitable subordination at the trial on this matter.

Otherwise, the remaining arguments advanced by the Defendants go right to the heart of the instant lawsuit, namely, whether or not the Debtors caused the failure of the water line system. These remaining arguments and the documents filed in opposition to the Motion for Summary Judgment do not convince this court that there are not material facts in dispute and, therefore, the remaining arguments made by the Defendants will fail.

An appropriate Order will follow.

### *ORDER*

**AND NOW,** this 20th day of July, 1995, **IT IS HEREBY**

**ORDERED** that the court will deny in part and grant in part the Motion for Summary Judgment filed by the above-captioned Defendants.

**IT IS FURTHER ORDERED** that the counts against the Defendants found in Counts II and IV for unjust enrichment and Counts V and VI for intentional interference with contractual relations are hereby dismissed and the Motion for Summary Judgment filed by the Defendants as to those counts are granted.

**IT IS FURTHER ORDERED** that, as to the several counts of the complaint surviving the Motion for Summary Judgment, the parties will proceed to a Pre-Trial Conference on this matter which will be held on *Friday,*

*September 22, 1995, at 10:00 o'clock A.M.* in Courtroom No. 1, Federal Building, 197 South Main Street, Wilkes–Barre, Pennsylvania.